A.T., A MINOR STUDENT, BY AND THROUGH HER PARENTS AND NEXT FRIENDS, B.G. AND J.G., AND B.G. AND J.G. IN THEIR INDIVIDUAL CAPACITIES,

*Plaintiffs,*

v.

CLEVELAND CITY SCHOOLS BOARD OF EDUCATION; CLEVELAND MIDDLE SCHOOL; MS. LENEDA LAING, IN BOTH HER OFFICIAL AND INDIVIDUAL CAPACITY AS PRINCIPAL OF CLEVELAND MIDDLE SCHOOL; MS. STEPHANIE PIRKLE, IN BOTH HER OFFICIAL AND INDIVIDUAL CAPACITY AS VICE-PRINCIPAL OF CLEVELAND MIDDLE SCHOOL; MS. LAUREN LASTORIA, IN BOTH HER OFFICIAL AND HER INDIVIDUAL CAPACITY AS THE 6TH GRADE COUNSELOR AT CLEVELAND MIDDLE SCHOOL; MS. TERRY ESQUIANCE, IN BOTH HER OFFICIAL AND INDIVIDUAL CAPACITY AS A.T.'S HOMEROOM TEACHER; MS. ASHLEY KEITH, IN BOTH HER OFFICIAL AND HER INDIVIDUAL CAPACITY AS A.T.'S MATH TEACHER, AND MATTHEW INGRAM, IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITY AS THE SEVENTH GRADE VICE PRINCIPAL,

*Defendants.*

No. _____

Honorable Travis R. McDonough

**JURY IS DEMANDED**

**COMPLAINT**

**COME THE PLAINTIFFS**, A.T., a minor student, by and through her parents and next friends, B.G. and J.G., who also bring this cause of action in their individual capacities. They show for their Complaint:

### I. INTRODUCTION

1. This lawsuit arises from the Defendants' deliberate indifference to extreme student-on-student sexual harassment, sexual assault, sexual battery, and bullying. Defendants' history of failure to take appropriate preventive measures, failure to

adequately respond to the events described herein, failure to adequately investigate said events, failure to observe Title IX requirements, and failure to offer appropriate assistance to the victim, all implicate civil rights violations, as well as the denial of educational opportunities. This action alleges violations of Title IX, denial of equal protection of the laws under the Fourteenth Amendment to the United States Constitution, and violation of State tort laws.

### I. PARTIES

1. A.T. is a minor child and a citizen of Bradley County, Tennessee, where she resides with her mother and next friend, B.G., and stepfather, J.G.

2. The Cleveland City Schools Board of Education (hereinafter, "CCSBE") is a governmental entity charged with managing public schools in Cleveland, Tennessee. It is a recipient of federal funds.

3. Cleveland Middle School (hereinafter, "CMS") is governed, regulated, and controlled by CCSBE.

4. Defendants Terry Esquinance, Ashley Keith, Lauren Lastoria, Leneda Laing, and Matthew Ingram are all employed by CMS. Defendant Stephanie Pirkle was employed by CMS at the time of the incidents complained of herein.

5. Defendant Esquinance, in both her official and individual capacity, acted as the homeroom teacher for A.T.

6. Defendant Laing, in both her individual and official capacity, acted as Principal for CMS.

7. Defendant Pirkle, in both her official and individual capacity, acted as Vice-Principal of CMS.

8. Defendant Lastoria, in both her official and individual capacity, acted as the 6th grade counselor.

9. Defendant Keith, in both her official and individual capacity, acted as A.T.'s math teacher.

10. Defendant Ingram, in both his individual and official capacity, acted at A.T.'s 7th grade vice-principal.

11. All individual Defendants named herein are, to the best of your Plaintiffs' understanding and belief, citizens and residents of the State of Tennessee, but whose residential addresses are presently unknown.

## I. Jurisdiction

1. The Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331, Title IX (the Education Amendments Act, 20 U.S.C. § 1681), and the Fourteenth Amendment to the United States Constitution, through 42 U.S.C. § 1983. The Court also has jurisdiction pursuant to 28 U.S.C. § 1343. The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because the State law claims are so related to Plaintiffs' claims under Title IX, the Fourteenth Amendment of the Constitution of the United States, and 42 U.S.C. § 1983, that they form part of the same case or controversy under Article III of the Constitution of the United States.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b), as all of the Defendants reside or may be found in Bradley County and the acts or omissions complained of herein occurred in Bradley County, located in the Eastern District of Tennessee.

## I. Facts

1. On or about Monday, September 23, 2019, B.G. received a call from the Department of Children's Services (hereinafter, "DCS") while at work.

2. Once B.G. was able to return the call, she was advised to go to the DCS office so as to discuss the safety of A.T.

3. B.G. was completely unaware as to the matter the DCS representative wished to discuss, as no concerns as to the safety of A.T. had been raised previously, by DCS or otherwise.

4. Upon receiving this call, B.G., contacted her husband J.G., A.T.'s stepfather, as well as A.T.'s biological father, requesting they both attend the meeting as well.

5. At said meeting, the DCS representative began referring to an assault which occurred the week prior on September 18, 2019.

6. B.G. and J.G. represented to the DCS representative that they were unaware of any such event, and at no point had they been advised of such.

7. The DCS representative advised the three (3) that DCS had been alerted that A.T. was the victim of a sexual assault and sexual battery committed by another student, which occurred on school premises.

8. They were further advised the assailant had been taken to juvenile court and separated from the general student populace and placed in "Raider Academy," the functional equivalent of what one might refer to as "alternative school."

9. Further, the DCS representative advised that not only had the assailant sexually assaulted and sexually battered A.T., but he then proceeded to threaten the other children who had witnessed said assault with physical violence should they disclose what they had observed.

10. The DCS representative then scheduled wellness checks to examine all three (3) parents' homes, to which Plaintiff parents had no objection, willfully allowing the DCS representative to conduct her investigation to the extent she felt necessary.

11. Additionally, the DCS representative scheduled appointments with Janet Doe's other children to ensure their safety, as well.

12. Shockingly, the DCS representative advised Jane Doe's parents that CMS had required Jane Doe to write out and execute a statement as to the events that transpired in the absence of a parent or guardian.

13. Again, at no point had Jane Doe's parents been advised by CMS as to the incident involving their daughter, a fact that "shocked" the DCS representative.

14. The very next day, Janet and John Doe received a Mutual No Contact Order. They had no knowledge as to the reason for its issuance.

15. Much to the dismay of Plaintiffs and counsel, this No Contact Order was issued and entered on the 19th Day of September, the week prior to Jane Doe's parents being made aware that the sexual assault had even occurred.

16. The parents allowed Jane Doe to divulge the details of the sexual assault in her own time, and eventually it was discovered that this assault was not merely a "pat on the bottom," contrary to the account given to the DCS representative by CMS.

17. Instead, it was discovered that not only was the assault of a sexual nature, such was done forcefully, with Jane Doe being shoved up against a locker, molested, and brutalized, resulting in physical injuries from which Jane Doe had to recover more than a week after the assault. Her psychological injuries remain with her and shall remain for the foreseeable future.

18. The Friday of the same week, Jane Doe called her mother, Janet Doe, requesting that she be picked up from school for fear of being sexually brutalized yet again by her assailant.

19. Janet Doe advised she was safe due to the Mutual No Contact Order; however, this did little to quell Jane Doe's deep-seated fear and trepidation.

20. On October 2, 2020, John Doe was served with a subpoena dated the 27th day of September 2019, requiring their presence at a hearing scheduled for December 12, 2020 to take place at Bradley County Juvenile Court, Case No. 19-00834.

21. On or about November 2, 2019, Janet Doe received an email from a teacher of Jane Doe, requesting a meeting, stating Jane Doe was failing all of her classes.

22. The teachers at said meeting advised that Jane Doe was smart and capable, yet she was failing to submit her homework and was "not trying" in class.

23. After discussing Jane Doe's poor academic performance, the matter of Jane Doe's sexual assault arose.

24. For the *very first time*, Janet and John Doe were advised that a sexual assault, had, in fact, occurred. This was the first instance in which *anyone* from CMS even acknowledged the assault, teacher or otherwise.

25. During the conference, one (1) of the three (3) teachers present advised that she was the one to take Jane Doe to CMS office following said sexual assault.

26. This teacher informed Jane Doe's parents that she was not the one to report the assault. Instead, the assault was reported by one of Jane's friends.

27. Additionally, said teacher advised that not only was Jane Doe in fear for her safety, but *all* of the students were afraid of the assailant.

28. Again, Janet and John Doe were stunned by the fact that all three (3) of the teachers with whom they met were aware of their daughter's assault, and yet none of them, or any other representative of CMS, considered it important enough to bring it to their attention.

29. Janet Doe advised these three (3) teachers that all three (3) of the parents were unaware of the assault until they were confronted by DCS five (5) days after the event in question, and several days after the Mutual No Contact Order had been issued.

30. At the court date on December 12, 2019, Jane Doe displayed signs of fear, trepidation, overwhelming anxiety, embarrassment, and desire not to even be party to the proceeding, despite being the actual victim, and did not want to lay eyes upon her assailant.

31. At said hearing, the Assistant District Attorney assigned to the matter, with the assailant's file in hand, advised Janet and John Doe that their daughter's assailant already had an extensive record despite only being eleven (11) years of age at the time.

32. As of the date of this hearing, the assailant had failed to comply with Court-Ordered counseling.

33. The Assistant District Attorney advised that the Court would issue an additional Order regarding the assailant's counseling, especially considering *this was not the first time the assailant had sexually assaulted Jane*.

34. This was the first time Janet and John Doe were made aware that, not only had their daughter been sexually assaulted and CMS had concealed the same, their daughter had been sexually assaulted by the same assailant *multiple* times.

35. Yet again, Janet and John Doe were made aware that CMS had kept them in the dark as to the sexual assaults on their daughter, concealing their culpability.

36. Subsequent to this, the Assistant District Attorney advised a representative from CMS that Janet and John Doe had not been contacted by CMS, which he represented he would address. However, yet again, at no point were the parents of Jane Doe contacted by *any* representative from CMS.

37. Jane Doe began exhibiting signs of severe depression, anxiety, and became withdrawn. This caused Janet and J.G. to become fearful A.T. may wish to harm herself.

38. This entire ordeal resulted in not only mental anguish for A.T., but also for her parents, who felt they were unable to protect their own child.

39. Stated plainly, CMS denied B.G. and J.G. an opportunity to protect their child.

40. At no point did CMS attempt to separate A.T. from her assailant, resulting in additional emotional distress for A.T.

41. At no point did CMS advise B.G. and J.G. of the repeated sexual assaults of their daughter by another student.

42. The actions and inactions of CMS resulted in physical and emotional trauma suffered by not only A.T., but also by her parents.

43. Subsequently, A.T. began counseling at Hiwassee Mental Health, at which she was diagnosed with Post-Traumatic Stress Disorder. Accordingly, A.T. was prescribed

medications so as to alleviate at least some of the symptoms which are the byproduct of the repeated sexual assaults.

44. Likewise, both B.G. and J.G. have begun counseling, and both have been prescribed antidepressants and anti-anxiety medications.

45. On October 19, 2020, A.T. placed a call to J.G., stating Defendants had placed her assailant in the very same class as A.T., resulting in further emotional trauma, forcing her to relive the events of the past while fearing another sexual assault, in spite of the No Contact Order previously issued by the Juvenile Court of Bradley County.

46. This further exemplifies callous and intentional indifference to Plaintiffs' rights and wellbeing, both physical and emotional.

47. These Defendants had actual knowledge of the multiple sexual assaults, actual knowledge that A.T.'s parents had not been notified of the same, yet nonetheless deliberately turned an indifferent eye to pervasive, repeated, egregious, and foreseeable sexual assaults upon the person of this child.

48. Presently, Plaintiff A.T. is in the seventh (7th) grade.

49. On the 19th of April 2021, Defendant Ingram held a grade-wide assembly via Zoom for the seventh (7th) grade.

50. The subject of the assembly was sexual assault and harassment.

51. The seventh (7th) grade was the only grade to have such an assembly.

52. During said assembly, Defendant Ingram stated that sexual assault and harassment occurs when students "horseplay," explaining how "kids [their] age are starting to

notice things," and "[e]ven if you look at somebody the wrong way, you'd probably get sued."

53. Defendant Ingram further trivialized sexual assault and harassment by referring to such conduct as merely "bottom slaps" or "pats," a direct reference to the account of the assault of A.T. given by Defendants.

54. Seemingly attempting to dissuade students from reporting similar instances of sexual assault and harassment experienced by Plaintiff A.T., Defendant Ingram stated that if a student reported such conduct to him, he would "have to report it to Officer Cruz."

55. After Defendant Ingram concluded his remarks, he then invited any of the teachers to add any additional comments.

56. At this point, Plaintiff A.T.'s teacher expounded upon the subject of individuals who were subject to sexual assault and harassment subsequently filing suit.

57. In response to this, a peer of Plaintiff A.T. shouted, "[it is because] [t]hey're probably poor!"

58. Once the assembly concluded, the children then began to play a modified game of tag in which they would touch each other, then scream "sexual harassment!"

59. Plaintiff A.T. was subjected to the above-referenced conduct by Defendants, her teacher, and her peers.

60. Yet again, Defendants demonstrated intentional indifference to the care and wellbeing of this child.

61. Additionally, this latest incident demonstrates that Defendants CCSBE and CMS failed to adequately address the underlying objectionable conduct of their employees,

administration, and all other parties acting on their behalf, despite this very cause of action putting them on notice that they need do so.

## I. CAUSES OF ACTION

1. Plaintiffs bring the following causes of action in the counts below.

### COUNT I. TITLE IX – CCSBE AND CMS

1. The foregoing factual averments are incorporated herein as though rewritten verbatim.

2. The sex-based harassment of the Plaintiff A.T. was severe, pervasive, and objectively offensive, and deprived A.T. of access to educational opportunities or benefits.

3. CCSBE and CMS created, tolerated, and subjected A.T. to a hostile educational environment under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 681(a), because Plaintiff A.T. was treated disparately; suffered sexual assault, sexual battery, and other harassment; and CCSBE and CMS had a lack of adequate policies, training, and procedures, and deliberately failed to take appropriate preventive or remedial measures.

4. Moreover, CCSBE, CMS, their officials, and employees had actual knowledge of the harassment and chose not to seriously investigate or discipline the perpetrator.

5. CCSBE, CMS, its officials, and employees engaged in a pattern of behavior, a cover-up, to discourage students from reporting the sexual assaults, which is illustrated not only by Defendants' inaction following the multiple assaults of Plaintiff A.T., but also by their callous and tone-deaf response to this cause of action, e.g., the above-referenced assembly.

## COUNT II. TITLE IX RETALIATION BY WITHHOLDING PROTECTIONS — CCSBE AND CMS

1. The foregoing factual averments are incorporated herein as though rewritten verbatim.

2. CCSBE and CMS officials discouraged those with actual information of the sexual assaults from reporting to appropriate authorities and failed to report the sexual assaults to A.T.'s parents.

3. Once law enforcement became involved, CCSBE, CMS, and its officials ignored the matter altogether, feigning as though the assault never happened, and refused to investigate the matter or otherwise comply with responsibilities of Title IX.

4. Even when CCSBE and CMS's deception had been revealed, they nonetheless still refused to acknowledge the assault or contact the parents of A.T., much less take steps to remedy the situation.

## COUNT III. VIOLATION OF THE FOURTEENTH AMENDMENT AND SECTION 1983 — ALL DEFENDANTS

1. The foregoing factual averments are incorporated herein as though rewritten verbatim.

2. Plaintiff A.T. enjoys the right as an American public-school student to personal security, bodily integrity, and Equal Protection of the Laws.

3. Defendants Esquinance, Keith, Pirkle, Lastoria, Laing, and Ingram were all State actors acting under color of State law.

4. All defendants subjected Plaintiff A.T. to violations of her right to bodily integrity and Equal Protection of the Laws by failing to take appropriate preventive measures; failing to adequately supervise and train (or engage in supervision); and

by acting with manifest indifference to the sexual assault, sexual battery, bullying, and harassment of A.T.

5. The actions of CCSBE and CMS were taken pursuant to customs, policies, or practices of failing to investigate, failing to adequately train and supervise, and a historical indifference to the bodily integrity of students.

6. Defendants Esquinance, Keith, Pirkle, Lastoria, Laing, and Ingram were considered policymakers for the purpose of implementing and carrying on the aforesaid policies, customs, or practices.

### COUNT IV. MONELL LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE (42 U.S.C. § 1983) — ALL DEFENDANTS

1. The foregoing factual averments are incorporated herein as though rewritten verbatim.

2. Defendants Esquinance, Keith, Pirkle, Lastoria, Laing, and Ingram were State actors working for CCSBE, CME, and the City of Cleveland, Tennessee, respectively. They worked under color of state law in failing to appropriately prevent or remedy the sexual assaults.

3. Each defendant named herein violated A.T.'s right to equal access to an environment free from harassment and sexual assault, due to a policy or custom of failing to investigate, failing to take prompt remedial measures, failing to protect A.T., failing to provide a grievance procedure widely disseminated and capable of being understood, and failing to notify A.T.'s parents of the harassment and sexual assault, and acting with deliberate indifference to violence against A.T. These failures proximately caused the injuries sustained by A.T.

4. Additionally, CCSBE and SME violated Plaintiffs' Fourteen Amendment right to equal protection by failing to properly train and supervise its employees in mandated investigative requirements.

5. The need to train its principal, vice-principal, teachers, counselors, SROs, and Title IX Coordinator is so obvious, and the inadequacy so likely to result in violation of constitutional rights, that CCSBE and CMS were deliberately indifferent and acted pursuant to a policy or custom of indifference to violence against its students. These failures proximately caused the injuries to A.T.

### COUNT V. NEGLIGENT OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS — (ALL DEFENDANTS)

1. The foregoing factual averments are incorporated herein as though rewritten verbatim.

2. Defendants acted with intentional indifference to the multiple sexual assaults of A.T., failing to report the same to A.T.'s parents, and failure to employ appropriate remedial and preventative measures.

3. Defendants' failure to protect a minor child from sexual assault, with full knowledge of said assault, and failure to notify the parents of the minor victim as to the same is so outrageous that such is not tolerated by society.

4. The negligent and intentional actions of the defendants resulted in severe, pervasive, and extensive emotional trauma in A.T., B.G., and J.G.

5. The negligent and intentional actions of the defendants is both the actual and proximate cause of the emotional distress sustained by Plaintiffs.

### COUNT VI. NEGLIGENCE PER SE — (ALL DEFENDANTS)

1. Defendants' failure to notify B.G. and J.G. of the multiple sexual assaults of their daughter is a violation of Tenn. Code Ann. § 37-1-605.

2. Tenn. Code Ann. § 37-1-605 was intended to ensure parents are advised of any sexual assault of their child in a timely manner, so as to afford the parents to take appropriate action.

3. Defendants' failure to uphold this statutory obligation is the actual and proximate cause of the mental distress and anguish incurred by Plaintiffs. The failure of Defendants to advise B.G. and J.G. of their daughter's assault resulted their inability to take measures to ensure their daughter's safety, ultimately resulting in additional sexual assaults of A.T.

### COUNT VII. VIOLATION OF THE TENNESSEE GOVERNMENTAL TORT LIABILITY ACT — (ALL DEFENDANTS)

1. The foregoing factual averments are incorporated herein as though rewritten verbatim.

2. Based upon the foregoing, Plaintiffs bring claims against all Defendants for their negligence, negligent supervision, negligent failure to train, and negligence per se, under the Tennessee Governmental Tort Liability Act, as found at Tenn. Code Ann. § 29-20-101, et seq.

3. Defendants owed Plaintiffs common law and statutorily prescribed duties that were breached and are therefore liable under the Tennessee Government Tort Liability Act, Tenn. Code. Ann. § 29-20-205 for failure to exercise reasonable care to supervise and protect A.T., including from the foreseeable intentional acts of third parties that involved sexual assault and sexual battery of which the

Defendants had actual knowledge, in addition to Defendants' failure to report A.T.'s multiple sexual assaults to B.G. and J.G.

## VIII. Damages

1. The foregoing factual averments are incorporated herein as though rewritten verbatim.

2. For the totality of their claims, Plaintiffs seek seven million, five hundred thousand dollars ($5,500,000.00) in compensatory damages, and five million, five hundred thousand dollars ($7,500,000.00) in punitive damages.

3. In sum, Plaintiffs seek as damages payment appropriate for the mental suffering and pain for A.T.; payment appropriate for the mental suffering and pain for B.G.; payment appropriate for the mental suffering and pain for J.G.; payment of the costs of private education; reasonable attorneys' fees and costs; punitive damages against the individual defendants; injunctive relief to include appropriate policies, training, supervision, reporting requirements, observance of duties of Title IX officials, and monitoring; and any further relief at law or equity which may be appropriate.

4. Plaintiffs demand a jury be empaneled to try this Cause.

Respectfully submitted:

*/s:/ Russell Leonard*
Russell L Leonard, BPR #01491
*Attorney for Plaintiffs*
1016 W. Main St., Suite 3,
Monteagle, TN 37356
(931) 924-0447
(931) 924-1816 Facsimile
rleonardlegal@gmail.com